## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**NICHOLAS ASHFORD HUTCHINS,**

> **Plaintiff,**

**vs.**                                          **Case No. 3:19-cv-00445-LC-MAF**

**JONATHAN LEWIS SLOAN,**

> **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Nicholas Ashford Hutchins, an inmate proceeding *pro se*, initiated this civil rights action, pursuant to 42 U.S.C. § 1983, and was granted leave to proceed *in forma pauperis*. ECF No. 1, 6. The amended complaint, ECF No. 14, was served upon Defendants. ECF Nos. 21, 40. Defendant Unruh filed a motion for summary judgment; and, ultimately, Plaintiff filed a motion to dismiss the action against Unruh, leaving Defendant Sloan as the sole defendant in this case. ECF Nos. 45, 53, 54. This Cause is currently before the Court upon Defendant Sloan's Amended Motion for Summary Judgment. ECF No. 58.

After careful review, for the reasons stated below, Defendant Sloan's Amended Motion for Summary Judgment, ECF No. 58, should be DENIED and the case should proceed to trial.

## I.    Allegations of Hutchins' Amended Complaint, ECF No. 14

Hutchins sues Defendant Sloan a former correctional officer employed at Santa Rosa Correctional Institution Annex (Santa Rosa) alleging excessive force for an incident that occurred on July 11, 2017. ECF No. 14. Hutchins does not specify whether he is suing Defendant Sloan in his individual- or official capacity. However, because Hutchins is proceeding *pro se*, the Court liberally construes the complaint as suing Defendant Sloan in both capacities. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Hutchins claims that he was being escorted to "pre-confinement" by Defendants Unruh and Sloan "down the northside of Santa Rosa"; and, during the escort, Unruh jerked him back and forth in order to make it seem that Plaintiff was resisting the escort. ECF No. 14, p. 5. At one point, Unruh told him, "If you don't walk straight, force will be used." Id. As they passed through the gates separating K-Dorm from L-Dorm, the officers guided Hutchins toward the end of a hall known as the "blind side" because there are no cameras. Id. There, the two officers lifted Hutchins several feet off the ground and slammed him onto his head. Id., pp. 5-6. According to Hutchins, Defendant Sloan "started punching and pounding [him] in the back" and face and then kneed him on both sides of his ribs and face. Id., p. 6. Hutchins

claims the incident occurred in front of witnesses and without provocation. Id., pp. 6-7.

Hutchins alleges he suffered a cut under his right eye; swelling to the right side of his head; and injuries to his back, ribcage, and thumb. Id. Hutchins alleges that he was brought to medical but was denied the proper medical care and treatment for his injuries and was returned to C-Dorm confinement in a wheelchair. Id. Hutchins seeks compensatory damages in the amount of $250,000 and $500,000 for emotional damages against Defendant Sloan. Id., pp. 7-8.

## II.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law'

> because the non-moving party has failed to make a
> sufficient showing on an essential element of her case with
> respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for her motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman

v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, supra).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III. Defendant's Amended Motion for Summary Judgment, ECF No. 58.

As an initial matter, the Court granted Defendant Sloan several extensions of time to file a motion for summary judgment or an amended motion for summary judgment. See ECF Nos. 54, 56, and 59. The Court received Defendant's Sloan's amended motion on July 21, 2020. ECF No. 58. The Court then granted Defendant an extension of time to file another amended motion, until August 14, 2020. ECF No. 59. Instead, Defendant Sloan filed an unsigned motion to dismiss on September 16, 2020, followed by a signed, amended motion to dismiss (containing additional requests for relief) on September 23, 2020. ECF No. 63, 65. The motions "to dismiss"[1] will not be considered because Defendant Sloan filed them without the Court's authorization and beyond the Court's deadline to amend. See also

---

[1] Although the filings are styled as a "request to dismiss," in ECF No. 63, Defendant Sloan repeats his request for summary judgment and challenges the credibility of Plaintiff's claims of nerve damage made in Plaintiff's response to Defendant Sloan's Amended Motion for Summary Judgment. Defendant Sloan makes the same challenge in his "correct[ed]" [request to dismiss] but asks for dismissal and for the Court to enter a judgment in his favor for defamation. ECF No. 65. Defendant Sloan repeats his arguments that he is entitled to Eleventh Amendment Immunity and that Hutchins fails to state an Eighth Amendment claim. ECF Nos. 63, 65.

Court Order ECF No. 64. This Court will not permit piecemeal litigation. Accordingly, the Court only considers Defendant Sloan's operative, amended motion for summary judgment. ECF No. 58.

Defendant Sloan includes a declaration, specifically, Sloan "order[ed]" Hutchins "to stop his aggressive behavior," that "Hutchins refused to comply with orders"; therefore, it was "necessary to utilize reactionary physical force." Id., p. 4. Defendant Sloan "utilized a rearward force along with downward pressure to place . . . Hutchins in a supine position on the walkway in front of Kilo Dormitory . . . then ordered Inmate Hutchins to turn to a prone position on the ground, to which he refused. [Sloan] then placed his left hand on . . . Hutchins['] right shoulder at which time . . . Hutchins lunged in an attempt to bite [Sloan's] hand." Id. In response, Defendant Sloan pushed Hutchins on the right side of his face; and he and Unruh were able to place Hutchins in a prone position to gain compliance. Id. At that point, "all forced [sic] ceased." Id. Defendant Sloan maintains that he only used "the minimum amount of force necessary to overcome . . . [the] attempt to assault staff." Id.

Defendant Sloan argues that if he had applied the amount of force Hutchins alleges, there would be "major injuries" that would have required "admi[ssion] to the hospital." Id. Instead, Defendant Sloan claims Hutchins

suffered *de minimus* injuries "swelling in the . . . right cheek with pin-hole lacerations, but the wound was not bleeding." Id., p. 14.

Defendant Sloan claims he is entitled to Eleventh Amendment Immunity for all official capacity claims. Id. pp. 1, 7-8. Defendant Sloan claims that Hutchins fails to state an excessive force claim because the amount of force applied was necessary and was not applied maliciously. Id., pp. 8-11. Defendant Sloan argues that because Hutchins suffered only *de minimus* injuries, the claims for compensatory, punitive, or mental and emotional damages also fail. Id. pp. 8-15. Finally, Defendant Sloan asserts that Hutchins' state law claims are barred because the federal claims fail as a matter of law. ECF No. 58, p. 1.

Defendant Sloan provides as support several witness declarations, an emergency room record, and the jury verdict finding him guilty of misdemeanor battery against Hutchins.[2] The relevance of the exhibits is explained in the Discussion section below.

## IV.    Hutchins' Response, ECF No. 61

Hutchins largely reiterates his account of the incident in his unsworn response to Defendant Sloan's motion for summary judgment. ECF No. 61,

---

[2] These records were also submitted previously by Defendant Unruh as part of his motion for summary judgment. See ECF No. 45.

pp. 1-4. However, Hutchins raises an additional detail regarding his injuries: the "abnormal functioning of the right eye, which is believed to be a nerve malfunction." Id., p. 2. The Eleventh Circuit has held that the Rule 8(a) "standard does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage" rather, the proper procedure is "for plaintiffs to assert a new claim . . . [by] amend[ing] the complaint in accordance with Fed. R. Civ. P. 15(a)." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004). However, Gilmour involved a breach of contract claim, which was entirely absent from a complaint, and only first asserted in the plaintiff's response to a summary judgment motion. Id. at 1314-15.

Here, Hutchins is not raising an additional claim. ECF No. 62, p. 2. In the amended complaint, Hutchins listed among his injuries a cut just beneath his right eye; and this additional detail alleging more permanent damage is permissible. This does not prejudice Defendant Sloan. See Perez-Davis v. Randolph, Case No: 6:17-cv-1641-Orl-40KRS, 2018 U.S. Dist. LEXIS 206887 * | 2018 WL 6434520 (M.D. Fla. Dec. 7, 2018); see also Robbins v. Oubre, Case No. 5:13-CV-348 (CAR), 2014 U.S. Dist. LEXIS 114001, *2, 2014 WL 4070851 (M.D. Ga. Aug. 18, 2014) (plaintiff did not raise an entirely new claim in his response to the motion for summary judgment but rather,

"alleges more facts to support the same failure to protect claim previously asserted in his Complaint.").

Hutchins also provides the same sworn declarations provided by the Defendants – those from Officer Boos (ECF No. 62, p. 6); Officer Babcock (id., p. 8); Officer Unruh (id., p. 10) -- as well as the emergency room record (id., p. 12-13), and the jury verdict in the criminal case against Defendant Sloan (id., p. 15).

## V. Discussion

### A. Whether Defendant Used Excessive Force in Violation of the Eighth Amendment is a Genuine Issue of Material Fact for Trial.

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010). See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013) ("[d]eliberate indifference requires the following: (1)

subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence").

To establish excessive force, the force must have been "sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). Evidence viewed in the light most favorable to the plaintiff must go "beyond a mere dispute over the reasonableness of the force used" and must "support a reliable inference of wantonness in the infliction of pain." Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987). "[A] good-faith effort to maintain or restore discipline' does not give rise to an Eighth Amendment violation . . . the malicious or sadistic application of force to cause harm does." Thomas v. Comstock, 222 F. App'x 439, 441-42 (5th Cir. 2007) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). However, once a prisoner has been subdued, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." Skrtich v. Thornton, 280 F.3d 1295, 1304 (11th Cir. 2002) (citation omitted) (further affirming denial of summary judgment where broken ribs were beyond *de minimus* injury); "When jailers continue to use substantial force against a prisoner who has clearly stopped resisting -- whether because he has decided to become compliant, he has been subdued, or he

is otherwise incapacitated -- that use of force is excessive." <u>Danley v. Allen</u>, 540 F.3d 1298, 1309 (11th Cir. 2008).

First, the parties dispute whether Defendant Sloan's use of force was initiated in a good faith effort to restore discipline or maintain order. Here, Hutchins' maintains there was no reason for Defendant Sloan to use force because he was not resisting Unruh's directions and the entire incident was "without . . . provocation." ECF No. 14, pp. 5-7. According to Hutchins, Unruh was "jerking" him around to make it look like he was resisting. <u>Id</u>., p. 5. Defendant Sloan admits that he used force only after Hutchins "refused to comply with orders" and additional force was required because Hutchins' "attempted to bite [Sloan's] hand." ECF No. 58, p. 4. Still, Defendant Sloan argues that he only applied the minimal amount of force necessary to get Hutchins to comply. <u>Id</u>., pp. 4, 14-15. Once Hutchins became compliant, "all force ceased." <u>Id</u>., p. 4. Defendant Sloan also maintains that there is "nothing in the evidence (apart from Plaintiff's unfounded allegations) supports the Plaintiff's account that Defendant Sloan battered him maliciously." <u>Id</u>., p. 9. Despite Defendant Sloan's assertions, there is evidence which supports Plaintiff's allegations.

Defendant Sloan was charged with misdemeanor "battery on a prisoner malicious [without] great bodily harm" in Santa Rosa County Case

No. 17003302MMXAX. Id., p. 30. Officer Boos, Officer Unruh, and Hutchins testified at the trial. Id. On October 26, 2018, a jury found Defendant Sloan guilty. Id. Defendant Sloan admits to the guilty verdict but claims this is the result of the jury instruction mandating the outcome because "an unwanted touching" was sufficient. Id., p. 9. The conviction is final; Sloan did not appeal.

There are several sworn declarations related to the alleged incident. Id., pp. 18, 20, 22-23. Defendant Sloan's sworn declaration, id., p. 4, and his statement in his incident report filed the same day are, effectively, the same. Id., pp. 40-41.

Officer Robert Boos, a correctional officer assigned to the recreation yard at Santa Rosa, provided a sworn declaration and claimed that he "heard a commotion" and "saw Sloan and Unruh with Hutchins "in restraints on the sidewalk in front of K-dormitory." Id., p. 18. Boos saw "Sloan hit . . . Hutchins right shoulder area with his right, closed fist several times, and . . . observed . . . Sloan knee . . . Hutchins' right rib cage area several times." Id. Boos also "observed blood on . . . Hutchins' face and on the sidewalk." Id. Boos denied seeing Unruh batter Hutchins and did not see any blood on Unruh's side. Id. Defendant Sloan challenges the credibility of Boos' declaration because there is a history of contention between Boos and him. Id., p. 10.

Officer Babcock, a wellness officer at Santa Rosa, provided a sworn declaration stating he was exiting the recreation office and going toward "the main entrance of Kilo dormitory" when he "observed . . . Hutchins face down on the sidewalk, and . . . observed . . . Sloan strike . . . Hutchins in the lower back with closed fists." Id., p. 20. Like Boos, Babcock denied seeing Unruh batter Hutchins in any way. Id. This is consistent with the incident report filed by Babcock on the date of the incident. Id., p. 36.

Defendant Unruh, an internal security officer at Santa Rosa, provided a sworn declaration detailing his involvement in the incident. Id., pp. 22-23. According to Unruh, he and Defendant Sloan were escorting Hutchins "from food service to Juliet Dormitory Medical Triage Center for a pre-confinement medical evaluation." Id., p. 22. Once they passed through the gate, "Hutchins became agitated." Id. Unruh made attempts to "de-escalate" Hutchins' behavior; and Hutchins complied. Id. Unruh continued the escort, but Hutchins became "physically agitated again and attempted to break away from [his] custodial hold." Id. At that point, "Sloan placed a custodial hold on inmate Hutchins and utilized rearward force along with downward pressure to place Inmate Hutchins in a supine position on the walkway . . . which broke [the] custodial hold." Id. Unruh stated that Hutchins again became compliant but Sloan put Hutchins "in a three-point custodial hold on the ground . . . and

. . . [Unruh] could hear what appeared to be strikes being delivered to . . . Hutchins' body." Id. Unruh then "regained hold" of Hutchins but "Sloan use[d] excessive force by delivering numerous closed-fist strikes to . . . Hutchins' back and shoulder area." Id. Unruh instructed Sloan to stop. Id. Unruh maintained that, personally, he did not use excessive force on Hutchins and did not strike or punch Hutchins. Id. However, Unruh's own incident report on the date of the incident is inconsistent. Id., p. 38. Unruh does not indicate that he heard any strikes at all nor does the report detail whether he saw Sloan hit Hutchins in the back and shoulder with a closed fist. Id.

Additionally, there is Hutchins' prison complaint filed the date of the incident. Id., p. 32. There is also a discrepancy in Hutchins' account of the incident. Id. In the prison complaint, Hutchins claimed that Sloan and *two* other officers "jumped" him. Id., p. 32. But at this stage of litigation, the Court does not make a determination on the weight, consistency, or credibility of the evidence presented. That decision is reserved for the jury. Rather, currently, the Court is charged with determining whether there are genuine issues of material fact that should be proceed to trial.[3]

---

[3] Defendant Sloan asks the Court to find him "not guilty"; however, the instant case is not a criminal proceeding. ECF No. 58. This purpose of a Section 1983 action is to determine if a defendant state actor committed a constitutional violation and whether money damages or other relief is warranted. 42 U.S.C. § 1983.

The parties' positions are diametrically opposed. This fundamental disagreement on why it became necessary for Defendant Sloan to use force creates a genuine issue of material fact regarding the essential element of an excessive force claim: whether the force was "sadistically and maliciously applied for the very purpose of causing harm." Johnson, supra. Furthermore, the amount of force applied and whether the force continued after Hutchins was compliant is at issue. There is no recording of what actually occurred in the "blind side" space. Finally, Defendant Sloan's position that summary judgment is warranted because Hutchins suffered only *de minimus* injuries from the use of force is not persuasive, particularly in light of the sworn statements of fellow correctional officials who witnessed the incident, Defendant Sloan's conviction for misdemeanor battery against Hutchins, and Plaintiff's allegation that medical personnel were deliberately indifferent to his injuries, which required medical attention.

### B. State Tort Claims for Assault and Battery

The Eleventh Circuit recently outlined the state tort claims of assault and battery as occurring within the context of a Section 1983 action: an assault is "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." Sullivan v. Atl. Fed. Sav. & Loan

Ass'n, 454 So. 2d 52, 54 (Fla. 4th DCA 1984). In Florida, a battery is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). To determine whether an officer's actions are an assault and battery, courts inquire whether the officer's use of force was reasonable. City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (applying the reasonableness standard to battery); City of Fort Pierce v. Cooper, 190 So. 2d 12, 14 (Fla. 4th DCA 1966) (applying the reasonableness standard to assault). Pena v. Marcus, 715 F. App'x 981, 988 (11th Cir. 2017).

Only where a plaintiff's allegations are sufficient to state a claim under § 1983 for excessive force are they also sufficient to state the parallel claim of battery under Florida law. Detris v. Coats, 523 F. App'x 612 (11th Cir. 2013) (citing City of Miami v. Sanders, 672 So. 2d at 47 (holding in analogous context that "[i]f excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery"). As narrated above, Defendant Sloan's actions, as alleged by Hutchins, are unreasonable and sufficiently present a claim of excessive use of force under § 1983.

Therefore, it follows that Hutchins' state tort claims of assault and battery against Defendant Sloan should PROCEED.

C. The Extent of Hutchins' Injuries are Not *De Minimus* and is a Genuine Issue for Trial.

Eighth Amendment claims based on *de minimus* uses of physical force are not cognizable unless they involve force that is "repugnant to the conscience of mankind." Hudson, 503 U.S. at 8. Moreover, although a lack of injury "is not conclusive about the presence or absence of constitutional violation [,] a lack of serious injury can illustrate how much force was actually used." Walker v. City of Orlando, 368 F. App'x 955, 956 n.1 (11th Cir. 2010) (internal citation omitted); see also Stephens v. Broward Sheriff's Office, Case No. 0:13-CV-60349-Rosenberg/Brannon, 84 F. Supp. 3d 1327, 1337-38 (S.D. Fla. Dec. 10, 2014) (considering injury to the extent that it "inform[s] the Court as to the force used by the defendant during the course of the encounter."). While nominal damages may be appropriate in the absence of physical injury, that still requires the "violation of a fundamental constitutional right." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Thus, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citing Hudson, 503 U.S. at 9). Such an encounter involving only *de minimus* force is "insufficient, as a

matter of law, to state a constitutional violation." Bryan v. Spillman, 217 F. App'x 882, 886 (11th Cir. 2007). Not "every malevolent touch . . . gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Indeed, federal courts "have routinely held that a single push, shove, punch, or blow . . . simply does not rise to constitutional dimensions." Neal v. Miller, Case No. G87-467, 778 F. Supp. 378, 382 (W.D. Mich. 1991). Yet, "[a]n injury is not de minimus simply because it does not require extensive medical treatment." Philo v. Reams, Case No. 4:11-cv-394-SPM-GRJ, 2014 U.S. Dist. LEXIS 31173, *16 (N.D. Fla. Feb. 5, 2014) Report and Recommendation adopted Philo v. Reams, 2014 U.S. Dist. LEXIS 31174 (N.D. Fla., Mar. 11, 2014) (denying summary judgment as a broken rib was not considered *de minimus* injury). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." Hudson, 503 U.S. at 9.

Hutchins' allegations go beyond the mere "shove, punch, or blow." Hutchins alleges that two officers picked him up off the ground, slammed him onto his head, and then proceeded to punch his head and face, pound his back, and knee him in his ribcage and face. ECF No. 14, p. 6. Hutchins alleges he suffered multiple injuries including facial and head swelling, a cut under his right eye, and "injuries to the . . . back, ribcage, . . . and thumb."

Id., p. 6-7. Hutchins also claims the injuries were serious enough for him to be brought back to confinement in a wheelchair. ECF No. 14, p. 6. In his unsworn response, Hutchins alleges that the injury and the subsequent failure to receive medical care caused an "abnormal . . . functioning of the blinking of his right eye which is believed to be a nerve malfunction." ECF No. 61, p. 2.

Defendant Sloan admits and supplies the emergency room record to support his position that Hutchins had swelling in his "right cheek with pin-hole lacerations, but the wound was not bleeding." ECF No. 58, p. 14. Defendant Sloan also claims that Hutchins had "complained of back and right thigh/hip pain" but "walked out of the exam room without any assistance." Id.

The relevant medical evidence includes the emergency room record and a sworn declaration by Kellie Caswell, RN, BSN. ECF No. 58, p. 25-28. According to the medical record, Hutchins had swelling on his right cheek "with a pin hole laceration" that was "not bleeding. Id., p. 27. No back, thigh, or hip injuries were noted; and Hutchins walked out of the exam room. Id. The record indicates Hutchins was brought to the emergency room in a wheelchair but "walked out post exam"; and no treatment was needed. Id., p. 28. Caswell stated in her declaration that the emergency room record documents Hutchins' allegation of "post-use-of-force injuries, specifically

complaints of back and right thigh/hip pain" but no injuries were noted to these areas. <u>Id</u>., pp. 25-26. Caswell stated that Hutchins arrived at the emergency room "in a wheelchair but was discharged ambulatory." <u>Id</u>. According to Caswell, the physician was not notified because Hutchins' injuries were minor; and no treatment was necessary or provided. <u>Id</u>., p. 26.

Clearly, the parties dispute the extent of Hutchins' injuries and whether they are merely *de minimus*. More importantly, Hutchins alleges that he was injured and the reason there are no additional medical records is because the nurse ignored his injuries and did not provide any treatment for his injuries. This necessarily leads to another factual dispute – whether prison officials were deliberately indifferent to his serious medical need. If Hutchins has permanent damage to his right eye, this is not a *de minimus* injury. Even if the alleged injuries did not require extensive medical treatment, this Court has previously stated that is not the determining factor on whether the injuries are considered *de minimus*. <u>Philo</u>, <u>supra</u>. Moreover, at this stage of litigation, the medical record could support Hutchins' claim that the nurse ignored his injuries and did not provide additional treatment when it was allegedly necessary.

Ultimately, Defendant Sloan fails to demonstrate that there are no genuine issues of material fact in this case. As outlined above, there are

several. Accordingly, for the reasons discussed above, the Court concludes there are the following genuine disputes: (1) whether the beating occurred, as alleged by Hutchins and (2) whether Hutchins suffered the alleged injuries. Certainly, if a jury was to believe Hutchins' version of the events, a jury could find that Defendant Sloan's actions constituted excessive force. Therefore, Defendant Sloan's motion for summary judgment is due to be DENIED; and the matter should PROCEED to trial.

D. Mental and Emotional Injuries

Title 42 U.S.C. § 1997e(e) provides that:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.

The Eleventh Circuit has determined that the phrase "federal civil actions" means all federal claims including constitutional claims. Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citing Harris v. Garner, 216 F.3d 970, 984-85 (11th Cir. 2000 (en banc). In order to satisfy § 1997e(e), the prisoner must allege physical injury that is "more than de minimus, but the injury need not be significant." Siglar v. Hightower, 112 F.3d 191, 193, (5th Cir. 1997) (citing Hudson, 503 U.S. at 10); see also Harris v. Garner, 190 F.3d 1279, 1282, 1286-87 (11th Cir. 1999) reh'g en banc granted,

*vacated*, 197 F.3d 1059 (11th Cir. 1999), reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000) (*en banc*).

Here, Hutchins alleges serious physical injuries resulting from an alleged constitutional violation, which are more than *de minimus*. As such, Hutchins' claims for any mental or emotional injuries allegedly resulting from the use-of-force attributable to Defendant Sloan should PROCEED.

E. Official Capacity Claims and Eleventh Amendment Immunity

Florida's sovereign immunity extends to its agencies, subdivisions, or officers. See Alabama v. Pugh, 438 U.S. 781, 782 (1978); Fitzgerald v. McDaniel, 833 F.2d 1516 (11th Cir. 1987). That "bar exists whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. 265, 276 (1986). Naming a government official in his official capacity is the equivalent of naming the governmental entity itself. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). A state official, however, may be sued in his official capacity when the suit alleges a constitutional violation by the official, acting in his official capacity and seeks only prospective injunctive relief. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

The State of Florida is immune from monetary damages based upon the Eleventh Amendment. Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512-13 (11th Cir. 1986). This is so because the

Eleventh Amendment of the U.S. Constitution bars suit against a state in federal court absent valid congressional override, waiver of immunity, or consent to suit. See Wusiya v. City of Miami Beach, 614 F. App'x 389, 393 (11th Cir. 2015). Section 1983 does not abrogate state sovereign immunity for damage suits; and Florida has not waived its immunity from § 1983 suits. See id. A state and an agency of a state (i.e. the Florida Department of Corrections) are thus immune from liability under § 1983. See Williams v. Robbins, 153 F. App'x 574, 576 (11th Cir. 2005). Of course, suits for nominal damages against state officers in their official capacities are included in this Eleventh Amendment bar. See Simmons v. Conger, 86 F.3d 1080, 1086 (11th Cir. 1996) (finding district court erred in awarding nominal damages against a judge sued in his official capacity because the relief was barred by Eleventh Amendment).

Because Defendant Sloan was employed as a correctional officer within the Department of Corrections, at Santa Ana Correctional Institution, and because Hutchins does not seek injunctive relief against him, Defendant Sloan is immune from suit under the Eleventh Amendment. Accordingly, the claims against Defendant Sloan in his official capacity fail as a matter of law. Still, the claims against Defendant Sloan in his individual capacity may proceed.

F. Defendant Sloan's Counterclaim for Defamation Fails as a Matter of Law.

In his answer to the amended complaint, Defendant Sloan asserted a "counter claim" against Hutchins "for pain and suffering" for "liable [sic] and slander of [his] integrity and standing in the community." ECF No. 39, p. 2. Defendant Sloan maintains that Hutchins committed libel by filing false statements in this lawsuit. Id. Defendant Sloan argues he "was cleared of any use of force prior to this alleged misdemeanor," the use of force was justified; and he seeks $250,000 in damages. Id., pp. 2-3. Defendant Sloan's claim fails.

Florida defamation has the following five elements: (1) publication; (2) falsity; (3) the actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) there must be actual damages; and (5) the statement must be defamatory. Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1105-06 (Fla. 2008). The law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged, and no cause of action for damages will lie, regardless of how false or malicious the statements may be, so long as the statements are relevant to the subject of inquiry. Taylor v. Alropa Corp., 138 Fla. 137, 140, (Fla. 1939) (citing Myers v. Hodges, 53 Fla. 197, 212 (1907); see also

Fridovich v. Fridovich, 598 So. 2d 65 (Fla. 1992) (defamatory statements voluntarily made by private individuals to police or state's attorney prior to institution of criminal charges are presumptively qualifiedly privileged).

Whether Hutchins made the battery allegations against Defendant Sloan during the course of the criminal case or within the context of this Section 1983 lawsuit following Defendant's Sloan conviction, the statements are privileged and there is no action or remedy available for Defendant Sloan under Florida's defamation statute. Accordingly, this claim warrants dismissal.

## VI.  Conclusion and Recommendation

For the reasons stated above, it is respectfully RECOMMENDED that:

1.  Defendant's Amended Motion for Summary Judgment, ECF No. 58, be DENIED, in part, and the following claims PROCEED to trial:

    a.  The claims alleging excessive force in violation of the Eighth Amendment proceed against Defendant Sloan, in his individual capacity

    b.  The state tort claims alleging assault and battery proceed against Defendant Sloan, in his individual capacity.

    c.  The claims for compensatory damages, punitive damages, mental and emotional damages, and nominal damages proceed against Defendant Sloan, in his individual capacity.

2. Plaintiff's claims against Defendant Sloan in his official capacity should be DISMISSED.

3. Defendant Sloan's defamation claim against Plaintiff should be DISMISSED.

4. The Clerk is directed to remand the case to the Undersigned Magistrate Judge for further proceedings.

IN CHAMBERS at Tallahassee, Florida, on September 28, 2020.

<u>**s/ Martin A. Fitzpatrick**</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).